# IN THE COURT OF APPEALS OF IOWA

No. 13-0911
Filed March 26, 2014

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**CHAD JOSEPH SICKELS,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Cerro Gordo County, Karen Salic,

District Associate Judge.


     Defendant appeals his sentence for second degree theft.  **AFFIRMED.**


     Mark C. Smith, State Appellate Defender, and Martha Lucey, Assistant

Appellate Defender, for appellant.

     Thomas J. Miller, Attorney General, Sharon Hall, Assistant Attorney

General, Carlyle D. Dalen, County Attorney, and Andrew Olson, Assistant County

Attorney, for appellee.


     Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**TABOR, J.**

Chad Sickels appeals his sentence following his plea of guilty to second-degree theft for writing bad checks. He argues the district court used an impermissible factor, his poverty, in determining a prison sentence was more appropriate than probation. He also argues the district court concentrated too much on his criminal history and overlooked his efforts to reform in reaching its sentencing decision. We conclude the district court did not consider an impermissible factor and did not abuse its discretion by concentrating on Sickels's criminal history.

## I.     Background Facts and Proceedings

On June 20, 2012, Chad Sickels wrote two checks totaling $1074.18 to Mills Fleet Farm in Mason City. The bank returned the checks for insufficient funds. Fleet Farm sent a letter by certified mail to Sickels demanding payment within ten days of receiving the letter or the business would refer the matter for prosecution. During phone calls between the parties, Sickels said he would repay but needed time to come up with the money. When Sickels failed to make the payments, Fleet Farm followed up with a phone call to Sickels, but he hung up. Fleet Farm left a message informing Sickels he had until September 26, 2012, to repay the amount owed. When no payment arrived, Fleet Farm notified law enforcement.

By his own admission, Sickels knew he did not have money in his account to pay Fleet Farm, and he returned the merchandise "to get cash to pay bills to keep my apartment, keep food, you know, lights things like that on."

On December 20, 2012, the State charged Sickels with second degree theft, in violation of Iowa Code section 714.1(6), 714.2(2), and 714.3 (2011). On April 8, 2013, Sickels entered a guilty plea as part of an agreement with the State. In exchange for his guilty plea, the State agreed to make whatever sentencing recommendation appeared in the presentence investigation (PSI) report, and the defense was free to argue for a different sentence. At the June 3, 2013 sentencing hearing, Sickels argued for probation. The State sought an indeterminate five-year prison term, consistent with the PSI recommendation. The court sentenced Sickels to an indeterminate sentence not to exceed five years, a $750 fine, a thirty-five percent surcharge, and a law enforcement surcharge of $125. Sickels now appeals.

## II.     Standard of Review

We review sentences for correction of errors at law, and "[w]e will not reverse the decision of the district court absent an abuse of discretion or some defect in the sentencing procedure." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). We indulge a strong presumption in favor of a sentencing decision if it is within statutory limits. *Id.*

Abuse of discretion occurs when a court uses clearly untenable or unreasonable grounds or reasons as part of its sentencing analysis. *State v. Laffey*, 600 N.W.2d 57, 62 (Iowa 1999). Our "focus is whether an improper sentencing factor crept into the proceedings." *State v. Thomas*, 520 N.W.2d 311, 314 (Iowa Ct. App. 1994). If a court considers an improper factor, we may not speculate about the influence of that factor in the sentencing determination.

*State v. Carrillo*, 597 N.W.2d 497, 501 (Iowa 1999). If we find a court has considered an improper factor, we remand for resentencing. *Id.*

**III.   Analysis**

**A.      District Court's Reasons for Imposing a Prison Sentence**

After hearing testimony[1] and arguments from both parties, the court offered the following justification for its sentencing decision: "Mr. Sickels, the law requires that I take a number of factors into consideration when deciding what an appropriate sentence should be for you. Those include your rehabilitation, as well as the protection of the community, and deterring others from committing similar crimes."

The court continued by discussing Sickels's criminal history, including his previous probation experiences.

> And I'm sure that you've heard those words from judges several times over the years because your criminal history shows you're committing crimes every year or so. And there's a point at which it becomes very difficult to know what it's going to take for you to be rehabilitated. Certainly over the past fifteen years you've made several choices to violate the law. And I understand many of the things Ms. Meints touched on, that, you know, perhaps you've had a hard childhood and that you have mental health issues; but you're not the only person who's ever had that and not every person turns to this type of criminal activity as a result of that.
>       You've had numerous felony charges, burglaries in 1998 out of Grundy County and Hardin. You went to prison on that after your probation was revoked. You have forgery convictions, burglary, another forgery, and that's just in 2002, went to prison for that and were paroled. You had a lottery ticket fraud and burglary third, went to the violator's program on that apparently. Story County you had another lottery ticket fraud in 2006; you were given probation on that, your probation was revoked and you were sent to prison then. [In] Hardin County you had a burglary third in 2006, went to

---

[1] The defense called three witnesses: Jessica Kalvig, Shirley Meints, and Sickels himself.

the violator program on that, and also a second count of burglary third it looks like. [In] 2012 you had a harassment third degree which, of course, also occurred while you were on parole along with this instant offense.

Your supervision history is terrible. There's not one single one that's been successful. Th[ese] have all been revoked. And it seems that it would be foolhardy for us to try probation again because you haven't taken advantage of it in the past.

The court then discussed the improvements in his life since the crime was committed and its remaining concerns about his continued criminal acts.

You do have a lot of people that have supported you and I trust that they will continue to do that even when you get out of prison. But I think in some ways that they aren't helping you. I think both Ms. Meints and Ms. Kalvig are very tender hearted people who have given you every opportunity and think that that's going to be helpful to you, but you're still at a point where you've pawned everything. You know, Ms. Meints was kind enough to pay this check off for you. You know, people are giving you buildings and still here we are with you committing crimes.

Finally, the court addressed Sickels's failure to take advantage of the mental health services that have been offered to him.

I do understand that you have some mental health issues that need to be addressed, but certainly you've been given the opportunity to address that throughout the last fifteen years even back as recently as October you were not willing to participate in it. And certainly in any event it doesn't excuse the criminal behavior you're engaging in.

If it is true that this—you're really at a point where you want to make significant changes, then you will have an opportunity to do that while you're in prison. But at this point the community just needs protection from you. And if you're at a point where you're down to very few resources, I think that's even riskier.

## B. Sickels's Challenges on Appeal

Sickels argues the district court abused its discretion by considering his "very few resources" as a factor supporting incarceration. He also argues the

court only looked at his criminal history, failing to consider the steps he has taken toward rehabilitation.

We examine Sickels's arguments in light of the statutory direction given to sentencing courts. "After receiving and examining all pertinent information," the district court should determine which sentence "will provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others." Iowa Code § 901.5. In addition, before suspending sentence, the court should consider the defendant's prior record of convictions or deferred judgments, employment circumstances, family situation, mental health, and substance abuse history. Iowa Code § 907.5.

A district court is required to give its reason on the record for the selection of a particular sentence. Iowa R. Crim. P. 2.23(3)(d). When choosing a sentence, courts must consider all pertinent matters, including the nature of the offense; the attending circumstances; defendant's age, character, and propensities; and chances for reform. *Formaro*, 638 N.W.2d at 725.

**1.    The sentencing court's mention of Sickels's admitted motivation for committing theft was not evidence of an improper consideration.**

Sickels contends he is entitled to a new sentencing hearing because the district court improperly considered his poverty in rejecting his request for probation. He zeroes in on the following sentence in the court's explanation: "And if you're at a point where you're down to very few resources, I think that's even riskier." Sickels compares his situation to the defendants in *State v.*

*Snyder*, 203 N.W.2d 280 (Iowa 1972) and *State v. Dunn*, No.12-0417, 2012 WL 6193868 (Iowa Ct. App. Dec. 12, 2012).

We find *Snyder* and *Dunn* distinguishable. In *Snyder*, our supreme court decided the imprisonment of a defendant, who had been convicted of operating while intoxicated, solely because he could not immediately pay a fine by reason of his indigency deprived him of his right to equal protection. 203 N.W.2d at 287 (noting "[d]istinctions in the administration of criminal justice between rich and poor are generally not likely to bear up under constitutional scrutiny"). In *Dunn*, our court held that a defendant convicted of drug possession could not be denied a deferred judgment based on his receipt of public assistance. 2012 WL 6193868, at *2–3. In neither *Snyder* nor *Dunn* did the defendants broach the issue of their poverty as an explanation for their criminal acts.

By contrast, in this case Sickels placed his economic hardships front and center. In his version of the offense included in the PSI, Sickels detailed his health issues which prevent him from working, explaining:

> So money really got tight. I was desperate for food and to pay bills. I made a bad decision to write checks for things and take them back for cash to pay bills. . . . I am sorry. I have since found resources to help in times of need and if I ever get in that spot again I will lean on them instead of doing things like this.

At the sentencing hearing, Sickels testified that it was not an excuse but that he wrote the bad checks because he "just needed to survive . . . needed to eat . . . needed to pay bills." In asking for a suspended sentence, his attorney said Sickels was "making ends meet" since the time of his theft offense.

Against this backdrop, we do not believe the sentencing court could be prohibited from considering Sickels's available resources as a factor in its sentencing determination. Sickels presented his financial straits at the time of the offense as a mitigating factor at sentencing. The defense also presented testimony and argument that Sickels had stabilized his economic condition, suggesting that he would be less likely to reoffend. The sentencing court's statements merely reflected its skepticism regarding those arguments.

Even if the sentencing court should have tailored its comments more precisely to respond to Sickels's arguments, we are "aware that the sentencing process can be especially demanding and requires trial judges to detail, usually extemporaneously, the specific reasons for imposing the sentence." *See Thomas*, 520 N.W.2d at 313–14. The district court leveled no general condemnation of Sickels based on his economic situation. Reviewing its comments as a whole, the sentencing court was only acknowledging what Sickels admitted—his lack of resources motivated him to write bad checks and then return the items for cash so he could pay his bills. The court was entitled to entertain the possibility that Sickels would engage in that behavior again.

**2.    The district court did not abuse its discretion by giving primary consideration to Sickels's criminal history.**

Sickels next argues the district court focused too much on his criminal history and failed to consider the improvements in his life he had made since his arrest. This complaint is contradicted by the record. The court listened to the witnesses who testified on Sickels's behalf and referenced them in its reasoning. The court also recognized Sickels had been working recently and that restitution

had been paid on his behalf.  The court was critical of Sickels for not addressing his mental health issues and referred to information found in the PSI about how Sickels was unable to successfully complete probation.

While a sentencing court must consider all the circumstances of a particular case, it need not specifically acknowledge each claim of mitigation urged by a defendant.  *State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995). This sentencing court did devote much of its explanation to Sickels's long criminal record and "terrible" history on supervision, but it was reasonable to do so given the choice between probation and incarceration.  It is within the discretion of the court to balance the factors to come to an appropriate sentence. *See State v. Wright*, 340 N.W.2d 590, 593 (Iowa 1983).  Sickels's criminal history and struggle to behave while on probation supports the court's decision to impose incarceration.  We find no abuse of discretion on this record.

**AFFIRMED.**